**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| JUNIPER NETWORKS, INC. | § | |
| | § | |
| vs. | § | CASE NO. 2:05-CV-479 |
| | § | |
| TOSHIBA AMERICA, INC., ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

**1.     Introduction**

This order memorializes the sanctions that were issued against the defendants at the show cause hearing on June 14, 2007. In this patent infringement case, the plaintiff is asserting claim 7 of U.S. Patent No. 5,418,924 against the defendants. The technology at issue involves memory controllers for use in laptop computers. At the show cause hearing, Messrs. Vito Canuso and Perry Oldham proffered arguments to explain why the court should not find the defendants in contempt for disobeying the court's amended discovery order. In light of those explanations together with the record in this case, the court found that the defendants willfully and intentionally violated the court's amended discovery order and issued sanctions against them, as more fully described herein.

**2.     Factual Background**

On June 9, 2006, an amended discovery order was issued by the court requiring, in relevant part, the defendants to produce "a copy of all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to the case . . . ." Dkt. No. 12. The court held hearings regarding Toshiba's compliance with the discovery order in this case on November 17, 2006 and February 21, 2007.

1

Among other items, the production of BIOS source code was at issue at the February 21, 2007, hearing. At that hearing, Mr. Oldham represented to the court that Toshiba had produced all documents bearing on BIOS source code that were in its possession and further represented to the court that such BIOS code resided solely with third parties. Transcript of February 21, 2007, Motions Hearing at 31-32. At the conclusion of that hearing, in response to Toshiba's suggestion that it had produced all relevant documents within its possession, custody, or control, the court ordered Toshiba to populate a chart prepared by the plaintiff to demonstrate Toshiba's production of documents urged by the plaintiff to be relevant to this case.

In response to the court's order, Toshiba filed charts on March 7 and 27, 2007. Those charts represented that Toshiba's BIOS code was unavailable. Contrary to Toshiba's repeated representations to the court, however, such BIOS code was available and in the possession of Toshiba. Toshiba's 30(b)(6) witness confirmed this. Deposition of Toshiba's 30(b)(6) Designee Norimasa Nakamura on April 27, 2007 at 139-140.

On May 4, 2007, the plaintiff filed a motion to compel Toshiba to produce numerous categories of documents, as well as its BIOS code for accused memory controllers. Dkt. No. 121. In response, Toshiba moved for protection, requesting the court to issue an order preventing the production of its BIOS code. Dkt. No. 123. On May 24, 2007, the Honorable Chad Everingham, United States Magistrate Judge, Eastern District of Texas, ordered Toshiba to produce its BIOS code (Dkt. No. 130) and thereafter held a hearing on June 7, 2007, to address the balance of the plaintiff's motion to compel. *See* Dkt. No. 131. Upon conclusion of that hearing, Judge Everingham certified certain facts to the undersigned. Judge Everingham's certified facts included the following:

1. The defendants had in their possession, custody, and/or control certain relevant documents, data compilations, and/or tangible things in the form of BIOS source code written and/or developed by the defendants or those in privity therewith for use in connection with laptop computers. The defendants disagreed with Judge Ward's resolution of the issues related to the Protective Order. Thereafter, the defendants made the conscious and willful decision to withhold from production in this case the Toshiba BIOS source code.

2. When the defendants made the decision to withhold the Toshiba BIOS source code from production, they did not move the court for any relief related thereto, nor did they seek any additional modifications to the Protective Order. In addition, the defendants did not disclose the existence of the Toshiba BIOS source code. To the contrary, at a hearing held on February 21, 2007, the defendants made representations that were calculated to give Judge Ward the impression that the defendants had in fact searched for and produced all relevant materials in their possession, custody, or control. Based on representations at the hearing, the court instructed the defendants to populate a chart prepared by the plaintiff with production bates numbers corresponding to the types of information and documents listed on the chart.

3. On March 7 and 27, 2007, the defendants filed versions of the populated chart with the court. With respect to certain entries related to BIOS code, the defendants represented that such code was "unavailable." However, this BIOS code was, in fact, actually in the possession, custody, or control of the defendants. The plaintiff only recently learned of the existence of the Toshiba BIOS code. After the existence of the code became apparent, the defendants filed an additional motion for protective order to prevent the disclosure of the source code.

4. That, based upon the record together with the arguments and statements made at the June 7, 2007 hearing, reasonable cause existed to find that the defendants willfully disobeyed the obligations placed upon them by Judge Ward's amended discovery order.

*See* Dkt No. 141.

Judge Everingham ordered the defendants to appear before the undersigned on June 14, 2007, to show cause why they should not be held in contempt for disobeying the court's amended discovery order. Dkt No. 141. This court conducted that hearing pursuant to its contempt powers as well as those flowing from the Federal Rules of Civil Procedure.

**3. The Law on Sanctions**

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders. This court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be "taken to be established for purposes of the action . . . ." Rule 37 also permits this court to strike claims from the pleadings and even to "dismiss the action . . . or render a judgment by default against the disobedient party." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980). "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Id..* at 763-64.

Rule 37(b)(2) sanctions requires that any sanction be just and that the sanction must be related to the particular claim which was at issue in the order to provide discovery. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (citations omitted) (sanction was a finding of alter ego rooted in party's behavior regarding discovery related to the alter ego issue). Further, the penalized party's discovery violation must be willful. *United States v. $49,000*

*Currency*, 330 F.3d 371, 376 (5th Cir. 2003). Finally, a severe sanction under Rule 37 is only to be employed where a lesser sanction would not substantially achieve the desired deterrent effect. *Id*.

This court also has inherent powers to enter sanctions. The inherent powers of this court are those which "'are necessary to the exercise of all others.'" *Roadway Express*, 447 U.S. at 764 (citation omitted). The contempt sanction is the most prominent inherent power, "'which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court . . . .'" *Id.* (citation omitted). When inherent powers are invoked, however, they must be exercised with "restraint and discretion." *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997). Thus, severe sanctions should be confined to instances of "bad faith or willful abuse of the judicial process." *Id.* In any event, when parties exploit the judicial process, a court may sanction conduct beyond the reach of other rules. *Natural Gas Pipeline v. Energy Gathering, Inc.*, 2 F.3d 1397, 1407 (5th Cir. 1993).

**4.     The Court's Findings and Sanctions**

In light of the record in this case, the court adopts Judge Everingham's findings and determines that:[1]

1. The defendants had in their possession, custody, and/or control certain relevant documents, data compilations, and/or tangible things in the form of BIOS source code written and/or developed by the defendants or those in privity therewith for use in connection with laptop computers. The defendants disagreed with the court's resolution of the issues related to the Protective Order. Thereafter, the defendants made the conscious and willful decision to

---

[1] The court limits its findings, and bases its sanctions, solely on the defendants' behavior with respect to its BIOS code. The court's factual findings are therefore focused on events surrounding the BIOS code.

        withhold from production in this case the Toshiba BIOS source code.

2. When the defendants made the decision to withhold the Toshiba BIOS source code from production, they did not move the court for any relief related thereto, nor did they seek any additional modifications to the Protective Order. In addition, the defendants did not disclose the existence of the Toshiba BIOS source code. To the contrary, at a hearing held on February 21, 2007, the defendants made representations that were calculated to give the court the impression that the defendants had in fact searched for and produced all relevant materials in their possession, custody, or control.

3. Those representations were amplified in Toshiba's court filings. On March 7 and 27, 2007, the defendants filed charts with the court in which they represented that the Toshiba BIOS source code was "unavailable." However, this BIOS code was, in fact, actually in the possession, custody, or control of the defendants.

4. Toshiba knew of the existence of relevant documents, misrepresented the existence and availability of those documents to the court, and did so in an effort to delay the proceedings and in violation of the discovery obligations under the court's amended discovery order.

5. The court rejects Mr. Canuso's representation, made at the June 14, 2007, show cause hearing, that his use of the term "unavailable" in reference to Toshiba's BIOS Code was merely a poor choice of words and that his intended representation was that such code was "irrelevant." Transcript of June 14, 2007 Sanctions Hearing at 11-13. Putting aside the fact that "unavailable" means something entirely different from "irrelevant," Mr. Canuso's representation was contradicted by his own partner, Mr. Muehlhauser, who on June 7, 2007, represented to Judge Everingham that Toshiba made the conscious decision to withhold its

BIOS code from production notwithstanding the court's protective order. Transcript of June 4, 2007, Motion Hearing at 14-15. The record reflects that Toshiba knew of its duty to produce its BIOS code of as at least January 4, 2007, the date the court issued the Protective Order (Dkt. No. 67), yet made the conscious decision to withhold such information. *See* Transcript of June 14, 2007, Sanctions Hearing at 6; Transcript of June 4, 2007, Motion Hearing at 14-15. The court therefore finds that Toshiba's representations made to the court on February 21, 2007, suggesting that all BIOS code resided with third parties, were made with a calculated eye toward deflecting the court's attention away from Toshiba's own BIOS code. The representations in the March 7 and 27, 2007, filings confirm this view.

Based upon the record together with the arguments and statements made at the June 7, 2007 hearing, the court finds that the defendants willfully and intentionally violated the court's amended discovery order, and that the defendants' conduct constitutes discovery abuse. As sanction for the defendants' conduct, the court

1. Limits the defendants' time for voir dire to one-half of the amount of time that will be awarded to the plaintiff by the court;

2. Removes two juror strikes from the defendants, leaving them with a total of 2. The plaintiff will receive a total of 4 juror strikes;

3. Limits the defendants' time for opening statements to one-half of the amount of time that will be awarded to the plaintiff by the court;

4. Limits the defendants' time for closing statements to one-third of the amount of time that will be allotted to the plaintiff by the court;

5. Prohibits the defendants from proffering *any* expert testimony or opinion from *any* source during trial regarding non-infringement, save and except through cross-examination of the plaintiff's expert witnesses;

6. Will instruct the jury that the court found that the defendants intentionally withheld documents from the plaintiff in willful violation of a specific court order to the contrary, and that the jury is entitled to consider this fact when determining the credibility of any witness called to testify in this matter; and

7. Awards attorneys fees and costs to the plaintiff that are attributable to the defendants discovery abuses in this case. In order to recovery such fees and costs, the plaintiff must, together with an application for such fees and costs, submit satisfactory proof that the fees and costs its seeks are attributable to the defendants' discovery abuse.

The court has considered lesser sanctions, including monetary sanctions, but finds that such sanctions would be ineffective to cure the prejudice resulting from Toshiba's conduct and deter such conduct in the future.

SIGNED this 11th day of July, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE